OPINION
{¶ 1} On February 5, 2004, the Tuscarawas County Grand Jury indicted appellant, Crystal Livers, on one count of manufacturing of drugs or cultivation of marijuana in violation of R.C. 2925.04(A). Said charge arose from a search of appellant's residence pursuant to a search warrant. The search warrant was based upon the affidavit of Tuscarawas County Sheriff's Deputy Eric Houze who believed marijuana and/or marijuana cultivation was present inside the residence. His believe was founded on trash bags found in a business trash container containing marijuana plant residue and store receipts. A trace of the receipts led Sergeant Houze to appellant.
 {¶ 2} The indictment was dismissed on June 16, 2004. Appellant was re-indicted on July 20, 2004. On August 25, 2004, appellant filed a motion to suppress, claiming the search warrant was based on insufficient probable cause. By judgment entry filed September 27, 2004, the trial court denied said motion.
 {¶ 3} On October 5, 2004, appellant pled no contest to the charge. By judgment entry filed December 13, 2004, the trial court found appellant guilty and sentenced her to two years supervised community control.
 {¶ 4} On January 7, 2005, appellant filed an appeal. This court remanded the matter to the trial court for findings on the motion to suppress. Final findings were filed on July 29, 2005. This matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 5} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 6} Appellee, the State of Ohio, filed a cross-appeal and assigned the following error:
 CROSS-ASSIGNMENT OF ERROR I {¶ 7} "A TRIAL COURT ERRS IN FAILING TO IMPOSE A MANDATORY FINE, AS PROVIDED FOR IN R.C. 2925.04, WHERE A DEFENDANT FAILS TO FILE WITH THE COURT AN `AFFIDAVIT OF INDIGENCY' PRIOR TO THE FILING OF THE JOURNAL ENTRY REFLECTING THE COURT'S SENTENCE ON CONVICTION."
 I {¶ 8} Appellant claims the trial court erred in denying her motion to suppress. We disagree.
 {¶ 9} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor
(1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 10} Appellant first attacks the issuance of the search warrant based upon a failure to establish probable cause. In its judgment entry of September 27, 2004, the trial court denied the motion to suppress based upon the good faith exception to the exclusionary rule and the inevitable discovery rule.
 {¶ 11} Upon remand, the trial court issued the following specific findings of fact that existed at the time of the issuance of the search warrant:
 {¶ 12} "1. Randy Moser, the owner of a business located on Wooster Avenue, north of the city limits of Dover, Ohio, reported to the Tuscarawas County, Ohio Sheriff's Department, a few weeks prior to 12/1/2003, that he had discovered, in his business trash hopper (dumpster) a number of large plastic garbage bags. The Tuscarawas County, Ohio Sheriff's Department investigated this incident, determined that one or more of the bags contained apparent marijuana plant residue but was unable to obtain any information from the bags concerning the source of the marijuana waste.
 {¶ 13} "2. On Monday, 12/1/2003, the same business owner, Mr. Moser, reported to the Tuscarawas County, Ohio Sheriff's Department that he had, again, discovered several large black plastic trash bags in his business trash hopper. The trash bags had apparently been placed in the business trash dumpster over the weekend preceding 12/1/2003 which was a Monday on the calendar.
 {¶ 14} "3. Deputy Eric Houze of the Tuscarawas County, Ohio Sheriff's Department responded to the 12/1/2003 complaint from Mr. Moser. When Deputy Houze arrived at the Moser business location he found seven large black trash bags. Deputy Houze opened the bags upon arrival and inspected the contents, eventually, of each bag. Deputy Houze testified at the Suppression Hearings in these cases that six of the seven bags contained apparent marijuana cultivation residue and that he identified approximately 17 different marijuana root systems, stems and stalks in the total of six of the seven trash bags. Additionally, Deputy Houze testified at the Suppression Hearings that he also found potting soil and `grow mixes' in one or more of the bags opened.
 {¶ 15} "4. Among the items found in one of the trash bags were household trash items, i.e. cat litter, cat feces, hair product containers, some other home product wrappers and a wrapper for the over-the-counter medication, Benedryl. These items were found in a smaller `WalMart' bag, blue in color. Additionally, found in the `WalMart' bag were two credit card purchase receipts. One was for a VISA
card purchase at Kaufman's Department Store in Akron, Ohio dated 10/4/2003. The second was a VISA card receipt for a purchase on 10/4/2003 at Holland Oil on Arlington Road in Akron, Ohio. Both credit card receipts showed the name of the account holder as `Crystal L. Livers.' Both of the receipts were in good condition and did not appear to be weathered or having been located elsewhere than in the bag where they were discovered.
 {¶ 16} "5. Deputy Houze, then, utilized the law enforcement automated data system (LEADS) to attempt to locate a residence address for `Crystal L. Livers.' Under that name, LEADS records indicated that the Ohio Bureau of Motor Vehicles had issued a driver license to Crystal L. Livers at an address of 2707 Schneiders Crossing Road, Dover, Ohio, an address located approximately two miles from the Moser business address where the evidence was found. Deputy Houze then checked a current telephone directory for the area and located a listing for Crystal L. Livers at the 2707 Schneiders Crossing Road, Dover, Ohio address." See, Judgment Entry filed July 29, 2005 at Findings of Fact Nos. 1-5.
 {¶ 17} Probable cause for the issuance of a search warrant exists when a reasonably prudent person would believe that the place to be searched contains evidence of a crime. Beck v. Ohio (1964), 379 U.S. 89. This definition has been expanded upon by the United States Supreme Court as follows:
 {¶ 18} "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v.U.S. (1949), 338 U.S. 160, 175.
 {¶ 19} Therefore, what a court must decide in issuing a search warrant is a practical common sense decision given all the circumstances set forth in the affidavit. Illinois v. Gates (1983), 462 US 213. Our review includes an examination of the facts to see if they give rise to a reasonable and common sense decision that evidence of criminal activity would be found at appellant's residence.
 {¶ 20} Upon review, we conclude there existed sufficient facts to establish the probability of criminal activity inside appellant's residence. The dumping of the trash bags was not an isolated incident as there had been previous drug dumps at the business. The store receipts leading to appellant were included in a bag within the main garbage bag. The receipts related in time and were of such an age as not to be stale. One can assume that an individual keeps sales receipts at least until the close of a billing cycle and therefore, a two month old receipt is not stale.
 {¶ 21} Based upon these facts, we find there was a reasonable probability that the trash found its origin in appellant's residence. We conclude the issuing court had probable cause to sign the search warrant. As a result, the search was valid and there was no need to qualify the search under the good faith exception to the exclusionary rule.
 {¶ 22} Assignment of Error I is denied.
 CROSS-ASSIGNMENT OF ERROR I {¶ 23} The state claims the trial court erred in not imposing the mandatory fine during sentencing. We agree.
 {¶ 24} Appellant was convicted of a third degree felony by violating R.C. 2925.04. Subsection (D)(1) of said statute states the following in pertinent part:
 {¶ 25} "(D) In addition to any prison term authorized or required by division (C) or (E) of this section and sections 2929.13 and 2929.14 of the Revised Code and in addition to any other sanction imposed for the offense under this section or sections 2929.11 to 2929.18 of the Revised Code, the court that sentences an offender who is convicted of or pleads guilty to a violation of division (A) of this section shall do all of the following that are applicable regarding the offender:
 {¶ 26} "(1) If the violation of division (A) of this section is a felony of the first, second, or third degree, the court shall impose upon the offender the mandatory fine specified for the offense under division (B)(1) of section 2929.18 of the Revised Code unless, as specified in that division, the court determines that the offender is indigent."
 {¶ 27} R.C. 2929.18 states the following in pertinent part:
 {¶ 28} "(B)(1) For a first, second, or third degree felony violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender."
 {¶ 29} Pursuant to division (A)(3) of R.C. 2929.18, the maximum statutory fine is $10,000.00 therefore, the mandatory fine is at least $5,000.00. Appellant did not file an affidavit of indigency prior to sentencing.
 {¶ 30} In refusing to impose the mandatory fine during sentencing, the trial court stated the following:
 {¶ 31} "FINDS that the Court reserves a decision relative to the imposition of a mandatory fine until the Defendant, through legal counsel, submits a photocopy of her 1040 Income Tax Form for tax year 2004. Defendant and her legal counsel should submit a photocopy of the 1040 form to Mr. Hipp also. The Court will, after Mr. Adgate and Mr. Hipp have the opportunity to comment on the Defendant's ability to pay a mandatory fine, in light of the submittal of the 1040 form, issue a supplemental Judgment Entry addressing the issue of the mandatory fine." See, Judgment Entry filed December 13, 2004.
 {¶ 32} Upon review, we find this decision to be in error given the statutory language cited supra. In addition, during the sentencing hearing, appellant admitted to being a dancer at "Sadie Rene's" and "Dreamers" six nights or days a week if possible. December 6, 2004 T. at 9.
 {¶ 33} Cross-Assignment of Error I is granted.
 {¶ 34} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed in part and reversed in part.
Farmer, J. Boggins, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio is affirmed in part and reversed in part, and the matter is remanded to said court for imposition of the mandatory fine. Costs to appellant.